# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs March 11, 2003

## STATE OF TENNESSEE v. TIFFANY D. OATES

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2001-D-2499    Steve R. Dozier, Judge**

---

**No. M2002-01873-CCA-R3-CD - Filed June 12, 2003**

---

The defendant pled guilty to aggravated burglary, a Class C felony, in exchange for a six-year, one-month sentence as a Range I, standard offender, with the manner of service to be left to the trial court's later determination. Following the sentencing hearing, the trial court ordered that the defendant serve her sentence in continuous confinement. The defendant appeals, arguing that the record does not support a sentence of full confinement and that the trial court erred in denying her request for probation or other alternative sentencing. Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOE G. RILEY, J., joined.

Ross E. Alderman, District Public Defender; and Jeffrey A. DeVasher (on appeal) and Umeka Foreman (at trial), Assistant Public Defenders, for the appellant, Tiffany D. Oates.

Paul G. Summers, Attorney General and Reporter; Helena Walton Yarbrough, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Derrick L. Scretchen, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

The defendant, Tiffany D. Oates, was indicted on one count of aggravated burglary and one count of theft over $500 based on her actions in breaking into the Nashville home of an elderly woman and taking her cash and other belongings. On May 16, 2002, the defendant entered a best interest guilty plea to aggravated burglary in exchange for the dismissal of the theft charge and a Range I, six-year, one-month sentence, agreeing to have the manner of service set by the trial court

at a later sentencing hearing. The facts upon which the defendant's guilty plea was based were set forth by the assistant district attorney general at the guilty plea hearing:

> Your Honor, in that case, if it went to trial, our proof would show that, on July twelfth of the year two-thousand-and-one, the victim in this case, an elderly woman by the name of Margaret Martin was . . . living here in Nashville, Davidson County.

> Sometime during that day, the Defendant had come by and asked – knocked on the door and asked for directions. She got inside, walked around, didn't do anything at that time, and ended up leaving.

> Later on she came back, about four-thirty in the morning. And the victim – her dog woke her up, because her dog was barking. When she went into her living room, this Defendant was standing in the middle of the living room.

> The victim yelled and asked – yelled for her to leave. When she left, she ended up leaving with the victim's pocketbook.

> The detectives got her name through their investigation. They interviewed her. First she denied ever going over to the house. Then she finally said, "Yeah, I was there; but I just happened to be going past the house, the door was open, I thought I'd go and check on the victim and see if she was okay."

> Based on these facts, the State recommends the previously-announced sentence.

The defendant's sentencing hearing was held on June 21, 2002. The victim, Margaret Martin, testified she was walking her dogs in an area near her condominium when the defendant and a man accompanying her approached to ask for assistance in locating an address. She allowed them inside her home to use her telephone book, and the defendant used her restroom as well. The victim testified that the defendant told her she had just gotten out of jail, was going to stay with a friend at the condominium complex, and intended to straighten out her life. The victim said she was impressed with the defendant, found her story convincing, and felt a desire to help her. Therefore, when the defendant offered to do some housecleaning for her, she took down her name and phone number. The victim stated, however, that she never hired the defendant to do any housecleaning.

The victim testified it was about 4:00 one morning when her dogs "jumped up and started raising all kinds of commotion." When she investigated, she found the defendant standing in the middle of her living room. She also saw that a set of her keys was missing from its customary spot on the wall, and realized that the defendant must have stolen them during her earlier visit. The

victim testified that the defendant told her she had seen her door ajar and a light on, and had pushed against the door to enter. The victim told the defendant that it did not matter, and she had no business walking into her house. After the defendant's departure, the victim checked and found a number of items missing from her home, including some of her jewelry, silverware, two silver pitchers, several other pieces of silver, several mayonnaise jars filled with change, a "big grocery sack half-filled with change," and a collection of Indian jewelry.[1]

The victim testified that she felt sorry for the defendant and would like to see her rehabilitated, but at the same time felt that more than a "slap on the wrist" was needed.

Eddie Arnold Fellers, the defendant's boyfriend, testified that if the defendant were to receive probation or other alternative sentencing, he would allow her to reside with him in his Unionville home. He said he and the defendant had discussed various residential drug rehabilitation facilities she could enter, including "Cumberland Heights," and the "Tony Rice Center" in Shelbyville, and that the defendant had expressed her willingness to undergo drug counseling and rehabilitation.

The thirty-three-year-old defendant testified she was addicted to cocaine and had been under the influence of the drug on the second occasion she entered the victim's home, when she stole the victim's money. She denied, however, taking anything other than money. She tearfully apologized to the victim for the theft, asked for forgiveness, and thanked the victim for her kindness to her. The defendant testified she was willing to do whatever it took to overcome her drug addiction, and that she desired to better herself and become "more of a productive citizen." She said she had worked in the past as an automobile mechanic, nail technician, and landscaper, but was interested in going to school to learn something different, such as how to work with computers. She also expressed an interest in learning psychology so that she could "help abused children," testifying that she herself had been sexually abused as a child by her stepfather.

On cross-examination, the defendant testified that she first went to the victim's home at the urging of a man nicknamed "Wee Bit," who told her he had met the victim at a gasoline station where she had given him money for gasoline, and that the victim had given him more money when he later visited her at her home. The defendant said she cleaned the victim's kitchen during that initial visit, and the victim gave her the coins in the mayonnaise jars as payment. She denied taking the victim's keys, and testified it was about 9:00 in the morning, rather than 4:00 or 4:30, when she returned to the victim's home. The defendant's explanation for the victim's 4:30 a.m. report to the police department about the incident was that the victim must have waited until the following morning to call the police. The defendant testified she first knocked, then opened the victim's door, and walked inside, where she saw the victim's purse on the floor. She removed the money from the

---

[1]The victim's testimony is somewhat confusing, but seems to be that the morning she surprised the defendant in her living room was not the morning following the defendant's first visit to her home. She also appears to suggest that the defendant, having observed and learned her daily habit of taking her dogs to a dog park in the afternoon, had been sneaking into her home and gradually stealing the items over the course of several days.

purse, put it in her pocket, and then threw the purse onto the couch when the victim's barking dogs came running in, followed by the victim.

The defendant acknowledged a prior conviction for accessory to armed robbery in South Carolina, prior convictions for prostitution, and two probation violations. With respect to her South Carolina accessory to armed robbery conviction, she claimed she had, in effect, been in the wrong place at the wrong time. She explained one of her probation violations as having resulted from her physical assault of her then-boyfriend's wife, who, the defendant said, had been trying to get her husband, the defendant's boyfriend, dishonorably discharged from the military. The defendant testified she had completed a drug treatment program in 1997, but acknowledged numerous arrests since that time.

At the conclusion of the hearing, the trial court ordered that the defendant serve her six-year, one-month sentence in continuous confinement, denying her request for probation or other alternative sentencing. Thereafter, the defendant filed a timely notice of appeal to this court, challenging the manner of service of her sentence.

## ANALYSIS

The defendant contends that the trial court should have placed her on probation after a period of confinement rather than ordering that she serve her sentence in continuous confinement. She argues that the factors upon which the trial court based her sentence of full confinement, her prior criminal record, two previous unsuccessful attempts at probation, and untruthfulness, should not have precluded her from receiving a sentence of split confinement. The defendant further argues that the record does not support a sentence of full confinement, asserting that her two prior unsuccessful experiences at probation do not establish that "frequent" or "recent" measures less restrictive than confinement have been applied to her; that her record of mostly misdemeanor convictions does not demonstrate that confinement is necessary to protect society from her criminal behavior; and that her lack of candor, while a sufficient basis for denying full probation, was insufficient to "eliminate altogether the prospect of an alternative sentence." The State contends that confinement was warranted based on the defendant's long history of criminal conduct and the fact that measures less restrictive than confinement have frequently or recently been unsuccessfully applied to her. We agree with the State.

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d

163, 166 (Tenn. Crim. App. 1993), <u>overruled on other grounds by</u> <u>State v. Hooper</u>, 29 S.W.3d 1, 9 (Tenn. 2000). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210; <u>State v. Scott</u>, 735 S.W.2d 825, 829 (Tenn. Crim. App. 1987).

The party challenging the sentences imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; <u>Ashby</u>, 823 S.W.2d at 169. In this case, the defendant has the burden of illustrating the sentence imposed by the trial court is erroneous.

As a standard offender convicted of a Class C felony, the defendant was presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6) (1997). Moreover, because she received a sentence of eight years or less, she was eligible for probation and the trial court was required to consider probation as a sentencing option. <u>Id.</u> § 40-35-303(a), (b). However, although the defendant was entitled to the presumption of alternative sentencing, she was not automatically entitled to probation as a matter of law. <u>See id.</u> § 40-35-303(b). "The trial court's determination of whether the defendant is entitled to an alternative sentence and whether the defendant is a suitable candidate for full probation are different inquiries with different burdens of proof." <u>State v. Kenneth Jordan</u>, No. M2002-01010-CCA-R3-CD, 2003 WL 21051739, at *3 (Tenn. Crim. App. May 8, 2003) (citing <u>State v. Boggs</u>, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996)). The burden was upon the defendant to show she was a suitable candidate for probation. Tenn. Code Ann. § 40-35-303(b); <u>State v. Goode</u>, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); <u>Boggs</u>, 932 S.W.2d at 477. In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" <u>State v. Bingham</u>, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting <u>State v. Dykes</u>, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

There is no bright line rule for determining when a defendant should be granted probation. <u>Bingham</u>, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis. <u>Id.</u> Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. <u>Goode</u>, 956 S.W.2d at 527. Another appropriate factor for a trial court to consider in determining whether to grant probation is a defendant's credibility or lack thereof, as this reflects on the defendant's potential for rehabilitation. <u>Id.</u>

The presumption in favor of alternative sentencing may be overcome by facts contained in the presentence report, evidence presented by the State, the testimony of the accused or a defense witness, or any other source, provided it is made part of the record. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). A trial court may deny alternative sentencing and sentence a defendant to confinement based on any one of the following considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1) (1997).

As noted by the defendant, the trial court based its denial of probation on her prior criminal record, probation violations, and lack of truthfulness in describing her role in the crime, stating as follows:

> One of the factors that I have to consider is the potential or lack of potential for rehabilitation or treatment, which [the victim's] being as fair as she can be; that's what she says she wants [the defendant] to get is rehabilitation.
>
> But the problem with that is – and she, [the victim], mentioned it briefly; and she's not aware of all the details – that prior criminal record does not indicate to me that there's a lot of potential there.
>
> She has – [the defendant] has thirteen misdemeanor convictions, prostitutions, assaults, drug paraphernalia, disorderly conduct, another assault, cocaine possession and, in addition, two felony convictions over in South Carolina for being involved in a robbery.
>
> And I'm sure the State's – South Carolina's version of what she did would vary from what she's saying here today, just like her story varied a lot to what witnesses have to say.
>
> In addition to that record, in terms of the potential for rehabilitation, she has two prior probation revocations.

Now, as my understanding, the first step in getting a handle on drug addiction is not only acknowledging that, which she does, but owning up to what has occurred and telling the truth.

I don't even think [the defendant] thinks she's told the complete truth here today, 'cause I don't. So, that's a problem she has, in terms of assessing her potential for rehabilitation.

I mean, there wouldn't – there's no doubt in my mind, if she were released on probation today, she'd have purchased, through some mechanisms, some crack cocaine, before the sun went down, and doing whatever you do when you're high on crack cocaine.

So, I'll allow her to get her treatment in an in-patient basis at CCA; but it's – she's not the candidate that I would be placing on probation.

The trial court did not, however, specifically address the Tennessee Code Annotated section 40-35-103(1) factors regarding the necessity of confinement. Therefore, we review the trial court's sentencing determinations *de novo*, without a presumption of correctness.

The defendant's presentence report reflects numerous prior arrests and convictions, from the age of twenty-three to the age of thirty-three. During that ten-year span, she managed to amass the following: a 1997 conviction in South Carolina for accessory to armed robbery; six drug-related convictions; three convictions for prostitution; two convictions for assault; a conviction for criminal impersonation; a conviction for failure to display her driver's license on demand; and a conviction for disorderly conduct. She was placed on probation for felony possession of marijuana in January 1993 in Chatham County, Georgia, and had her probation revoked in May of that same year. She was also placed on probation in September 1997 for her South Carolina accessory to armed robbery conviction, and was revoked in October 1998. In addition, her presentence report lists no less than twelve arrests for offenses including prostitution, resisting arrest, burglary, trespassing, and assault, which were either dismissed or nolled, or for which the disposition could not be found.

Although the defendant made a tearful apology to the victim at the sentencing hearing, she refused to acknowledge having stolen the victim's house key and other missing items. She also refused to acknowledge having entered the victim's home in the early morning hours, despite the victim's testimony to the contrary and the police log which apparently recorded the victim's call at 4:30 a.m. The defendant expressed her willingness to undergo drug rehabilitation to overcome her addiction and her desire to obtain further education in order to achieve her goal of becoming a more productive citizen. According to her testimony, however, she had completed a drug treatment program while incarcerated in South Carolina for her accessory to armed robbery conviction, had trained as a manicurist, and had work experience in the landscaping and auto mechanics fields. Despite her drug treatment and work experience, she continued to offend, as evidenced by her

lengthy record of arrests and convictions, many of which occurred after the completion of her drug treatment program. Thus, the defendant's past attempts at rehabilitation have clearly proved unsuccessful.

Based on this record, we conclude that the trial court did not err in denying the defendant probation or other alternative sentencing. The record supports the trial court's determination that the defendant was not a suitable candidate for probation based on her quite lengthy criminal record, lack of truthfulness, failure to accept responsibility for her actions, and past failures at rehabilitation and probation. Further, the defendant's criminal record and past violations of probation, the last of which occurred only four years before the sentencing hearing in the instant case, support the denial of a sentence of split confinement and the imposition of a sentence of continuous confinement.

## CONCLUSION

Having reviewed the record, we conclude that the trial court did not err in ordering that the defendant serve her six-year, one-month sentence in continuous confinement. Accordingly, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE